47 CCPA

**Application of John M. CROCKETT and Philip M. Hulme.**

**Patent Appeal No. 6478.**

United States Court of Customs and Patent Appeals.

June 8, 1960.

Martin and Kirkpatrick, JJ., dissented in part.

Clarence M. Fisher, Washington, D. C. (H. Hume Mathews, Murray Hill, N. J., of counsel), for appellants.

Clarence W. Moore, Arthur H. Behrens, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPAT-RICK.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 94, 95 and 96 of appellants' patent application No. 305,315 entitled "Cast Irons and the Manufacture thereof." The appealed claims are as follows:

"94. A method for treating gray iron prior to casting thereof, comprising, establishing a bath of a gray cast iron composition containing iron more than 90%, carbon from 1.7% to 4.5%, silicon from 1.0% to 3.5%, and manganese from 0.1% to 1.0%, injecting into said bath a mixture comprising essentially a major proportion of finely-divided calcium carbide and a minor proportion of finely-divided magnesium oxide, said mixture being injected with a carrier gas stream in an amount such that the total amount of carbide injected is in the range from 5 to 75 pounds of carbide per ton of molten metal, and casting the resulting treated molten metal promptly following said carbide-oxide treatment to provide an as-cast product having a retained magnesium content of less than .02% and which is substantially free of retained elemental calcium and which is characterized by the presence of uncombined carbon in nodular form.

"95. A method for treating gray cast iron prior to casting thereof, comprising establishing a bath of a gray cast iron composition containing iron more than 90%, carbon from 1.7% to 4.5%, silicon from 1.0% to 3.5%, and manganese from 0.1% to 1.0%, injecting into said bath a mixture comprising essentially a major proportion of finely-divided calcium carbide and a minor proportion of finely-divided rare earth oxide, said mixture being injected with a carrier gas stream in an amount such that the total amount of carbide injected is in the range from 5 to 75 pounds of carbide per ton of molten metal, and casting the resulting treated molten metal promptly following said carbide-oxide treatment to provide an as-cast product which is substantially free of retained elemental rare earth and elemental calcium and which is characterized by the presence of uncombined carbon in nodular form.

"96. A treating material for injection into molten gray cast iron to produce upgrade or nodular gray cast iron products and which comprises essentially a major proportion of finely-divided calcium carbide in admixture with a minor proportion of a finely-divided nodulizing agent selected from the group consisting of magnesium oxide and rare earth oxides."

The references relied on are:

| | | |
|---|---|---|
| Morrogh I | 2,488,512 | November 15, 1949 |
| Morrogh II | 2,552,204 | May 8, 1951 |
| Morrogh III | 2,747,990 | May 29, 1956 |

---

1. United States Senior Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'CON-NELL*, pursuant to provisions of Section 294(d), Title 28 U.S.C.

Appellants' invention relates to the production of cast iron having its graphitic carbon wholly or partly in the form of nodules. The step in the claim process with which we are here concerned consists of supplying to a bath of molten cast iron a stream of inert gas carrying a major proportion of finely-divided calcium carbide and a minor proportion either of magnesium oxide (claim 94) or an oxide of a rare earth metal (claim 95) in a finely-divided condition and promptly thereafter casting the treated molten metal.

The three reference patents are referred to by the board and in the briefs as Morrogh I, II, and III and will be so referred to here.

Morrogh I discloses a process for the production of a high silicon corrosion-resistant cast iron containing more than ten percent of silicon by weight, in which cerium is added to the molten iron "immediately before pouring." The result is said to be a cast iron free from coarse graphite flakes with improved mechanical properties and a freedom from porosity cavities, the graphite being present "in very finely-divided form or as a mixture of very finely-divided graphite and nodular graphite." The cerium may be added in pure metallic form, as an alloy with other metals or as "a reducible cerium compound."

Morrogh II relates to the production of cast iron in which the free carbon is present as graphite predominantly in the form of nodules. This result is said to be obtained by adding to the molten iron, before casting, magnesium oxide (magnesia) which may be introduced in the form of briquettes which also contain lime and silicon.

Morrogh III relates to the production of cast iron in which the graphite is present wholly or predominantly in nodular form, and discloses a process in which finely-divided calcium carbide entrained in a stream of inert gas is injected into the molten iron before casting.

The claims were rejected on Morrogh III as a primary reference in view of the other Morrogh patents as secondary references. Claim 94 was considered unpatentable over Morrogh III in view of Morrogh II on the ground that it would be within the skill of the art, in view of the latter patent, to add a minor proportion of magnesium oxide to the calcium carbide of the former.

We agree with the Patent Office tribunals that the combination of steps of claim 94 would have been obvious to a person of ordinary skill in the art. The patents clearly teach that both magnesium oxide and calcium carbide, individually, promote the formation of a nodular structure in cast iron, and it would be natural to suppose that, in combination, they would produce the same effect and would supplement each other. Even assuming, as appellant alleges to be the case, that the two together produce an effect somewhat greater than the sum of their separate effects, we feel that the idea of combining them would flow logically from the teaching of the prior art and therefore that a claim to their joint use is not patentable. In re Heinrich, 268 F.2d 753, 46 CCPA 933, and cases there cited. Accordingly the affidavits of record indicating that the process of claim 94 yields good results and has been commercially successful are not persuasive of the patentability of claim 94.

Appellants contend that magnesium oxide, as used in the Morrogh II process, will not produce a nodular structure in cast iron, and they have submitted affidavits purporting to establish this. We have considered the affidavits, but agree with the examiner and the board that they are inconclusive and fail to overcome the presumption of operativeness which attaches to the patent. Certain specific examples are given in the affidavits in which a nodular structure was not obtained although magnesium oxide was used, but it does not appear that any thorough investigation was made as to the effect of various amounts of that substance, nor does it appear that it was used in such an amount as to reduce the sulphur content of the cast iron below 0.02%, which the patent states is essen-

tial to cause the graphite to form nodules. See In re Michalek, 162 F.2d 229, 231, 34 CCPA 1124, 1127.

While claim 94 contains certain other limitations as to the composition of the original iron bath, the amount of calcium carbide used, and the magnesium and calcium content of the final product, we do not find that they point out anything unobvious. In fact, the original iron, as claimed, has the composition which is stated in appellants' application to be "that which is conventionally used to make gray cast iron." The range of calcium carbide set forth in the claim is a wide one—from 5 to 75 pounds per ton—and there is nothing to show that it is critical or involves anything more than judicious selection, and the same is true of the magnesium and calcium content limitations as to the final product.

Similarly the statement that the cast iron is poured "promptly" after the injection of the magnesium oxide and calcium carbide is not regarded as rendering the claim patentable, since such a procedure is considered obvious in view of the teaching in Morrogh I that the additive is put into the molten iron "immediately before pouring."

In our opinion, claim 94 calls for nothing more than an obvious combination of two old nodulizing materials, and the rejection of this claim will, therefore, be affirmed.

Claim 96 is so broad as to be fully met by a treating material comprising essentially calcium carbide and magnesium oxide. As above stated, we consider it to be obvious to use these two materials together in the production of nodular cast iron. We think it would also be obvious to combine them as a treating material prior to adding them to the molten iron. The combining of additives is an old expedient as shown, for example, in Morrogh II in which magnesium oxide is briquetted with lime and silicon before being added to the iron. The rejection of claim 96 will accordingly be affirmed.

Claim 95 was rejected on the ground that it would be obvious, in view of Mor-

rogh I, to add a minor proportion of an oxide of cerium, a rare earth metal, to the calcium carbide used in the Morrogh III process. We are unable to concur in this rejection since, in our opinion, Morrogh I does not fairly suggest the use of cerium oxide as a nodulizing agent *for conventional cast iron of the kind recited in claim 95.*

In the first place, the Morrogh I disclosure is directed to high-silicon cast iron, containing more than 10% silicon and not over 2% carbon and the purpose for which the cerium is added is to overcome objectionable features resulting from the high silicon content, namely, the presence of the carbon in the form of coarse and very coarse flakes, porosity cavities, and a very hard and brittle product. The patent does not clearly suggest that cerium or cerium compounds would be similarly useful in cast iron such as that of claim 95, containing only from 1.0% to 3.5% of silicon and up to 4.5% carbon. But even for high-silicon cast iron, Morrogh I does not teach that a predominantly nodular product will result from the use of cerium. On the contrary, the patent specification states that the eutectic carbon is in the form of finely-divided graphite, and that it is only the carbon, if any, in excess of that amount which is in nodular form. In the single example of Morrogh I, the total carbon content is only 1.19%, with 15% silicon, the patent repeatedly emphasizing that with high silicon content, carbon must be kept low. Though Morrogh I does not mention cerium oxide, we deem it to be included in his broad reference to a "reducible cerium compound."

The teaching of Morrogh I is that cerium or its alloys or compounds, if added to high-silicon cast iron, will result in a product in which the carbon is primarily in the form of finely-divided graphite, with the possibility of some nodular graphite being present. This would not, we think, reasonably suggest to one skilled in the art that cerium or its oxide would produce a predominantly nodular product in conventional cast iron of the

kind claimed here. Accordingly, there is nothing therein to suggest that anything would be gained by employing cerium oxide in the process of Morrogh III, which is directed to the production of a cast iron in which the graphite is wholly or predominantly in nodular form. These two Morrogh patents relate to the use of different materials to produce end products having different properties and, in our opinion, they cannot properly be combined to reject claim 95.

The decision of the Board of Appeals is affirmed as to claims 94 and 96 and is reversed as to claim 95.

Modified.

MARTIN, Judge (concurring in part and dissenting in part).

In my opinion the rejection of claim 95 should be affirmed.

Appellants' specification with reference to some of the nodulizing agents therein disclosed states:

> "The nodulization - impelling agents, *if in reducible compound or oxide form*, are preferably injected simultaneously with the calcium carbide, in finely divided form, and they may be in admixture with the finely divided calcium carbide. The nodulization-impelling agents, *if in elemental or metallic form*, are preferably added to the molten metal either simultaneously with the calcium carbide injection or just subsequent thereto, and they may be injected in finely divided form and may be in admixture with the finely divided calcium carbide." [Emphasis mine.]

As respects the cerium, a rare earth metal, of Morrogh I and the form in which it may be introduced into the Morrogh I cast iron, the patent, in strikingly parellel language, relates:

> "The cerium may be added in any convenient form, *either as pure metallic cerium*, mischmetall, ferrocerium, cerium carbide or other alloy of cerium. * * * The cerium *may be applied in the form of a*

*reducible cerium compound.*" [Emphasis mine.]

Thus, both the reference and the application equate cerium and reducible cerium compounds, of which cerium oxide is one, for use in cast iron compositions, one being a "conventional" cast iron, the other being a high silicon cast iron. The application states that the oxides are used because it "enables the rare earths to be used in their inexpensive, readily available, oxide form," and theorizes that:

> "The *rare earth oxides as used with the present invention are believed to be reduced by the injection calcium carbide at the normal founding temperatures* (2400° F. to 2900° F.) *of the metal baths to liberate cerium*, lanthanum, and other rare earth elements. In contrast, magnesium oxide is a refractory oxide and is therefore not as readily reduced by the injected calcium carbide at the temperatures of the bath, and this may be one of the reasons why it is not as effective in the combination treatment as the rare earth oxides for purposes of nodulization." [Emphasis mine.]

While these may be some of the reasons for the interchangeability of the metallic and oxide forms, reasons which are not stated in the patent, the indication of equivalency is set out. Consequently, I feel that Morrogh I suggests the use of either cerium or cerium oxide to perform the function for which it is used in his cast iron.

That patent teaches that cerium improves the properties of high silicon cast iron, the high silicon content being an important element in producing corrosion-resistant cast iron. One of the objects of the Morrogh I invention "is to provide a high-silicon cast iron in which the graphite is present in finely divided form or as a mixture of very finely divided graphite and nodular graphite." To that end when cerium is added to the cast iron composition "immediately before pouring," the eutectic carbon separates "on cooling in the form of a

very finely-divided undercooled graphite and any excess of carbon over the eutectic amount in the form of nodular graphite." A microscopic examination of sections of a casting made according to the Morrogh I invention showed the graphite to be present "partly in the form of nodules or spherulites."

Admittedly the patent does not state that all or substantially all of the graphite is nodulized. However, one interested in preparing nodulized cast irons could hardly fail to note that the patent does teach that nodular graphite in fact exists in the cerium containing cast iron of the patent.

The majority states that "Morrogh I does not suggest the use of cerium oxide as a nodulizing agent *for conventional cast iron of the kind described in claim 95.*" I do not understand this to mean that the majority feels the "high silicon" cast iron of the patent and the "conventional" cast iron of the application to be from non-analogous arts. While the patent disclosure specifically relates to high silicon cast iron, that does not mean that the suggestions which flow from such a disclosure are limited to that type of iron.

I believe that one dealing with the problem of nodulizing graphite in cast irons when confronted with the Morrogh I patent would think that the cerium of that patent might also cause nodulization of graphite in other cast irons, including the "conventional" cast iron of claim 95. Thus, the use of cerium, or its equivalent the oxide, in a cast iron of the type claimed herein would be obvious to one of ordinary skill in the art. I also feel, for the reasons stated by the majority with respect to the obviousness of combining calcium carbide and magnesium oxide as nodulization materials in cast iron compositions, that it would be obvious in view of the references to combine the rare earth oxides and calcium carbide as a nodulizing composition for "conventional" cast irons. The other limitations of claim 95 are parallel to those of claim 94. With respect to them, the majority said, "we do not find that they point out anything unobvious." That statement is equally applicable to claim 95.

I would affirm the rejection of all of claims 94 to 96.

KIRKPATRICK, J., joins in this opinion.