56 CCPA
**Application of John J. MELCHIORE and Archibald P. Stuart.**

**Patent Appeal No. 8091.**

United States Court of Customs and Patent Appeals.

Feb. 20, 1969.

———◆———

Donald R. Johnson, Philadelphia, Pa., for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, ALMOND and BALDWIN, Judges.

WORLEY, Chief Judge.

The issue here is whether the Board of Appeals committed reversible error in sustaining the examiner's rejection of claims 2–4, 6–10, 12–16, 18, 20 and 22–26 [1] as unpatentable in view of certain prior art under 35 U.S.C. § 103.

It appears from the record that it was known to prepare aromatic carboxylic acids from alkyl-substituted aromatic compounds in a liquid phase oxidation process employing nitrogen dioxide ($NO_2$) as the oxidizing agent to convert the alkyl group to a carboxylic acid group. In that prior art process, $NO_2$ is itself converted or reduced to nitric oxide (NO), and the latter gas, after leaving the reaction vessel and removal of water vapor therefrom, is reacted with oxygen in a separate regenerating chamber to again form $NO_2$ which is then recycled to the alkyl aromatic oxidation process.

Rather than synthesizing or regenerating the $NO_2$ oxidizing gas *ex situ*—outside the alkyl aromatic oxidation zone— as in the prior art, appellants feed a mixture of NO and oxygen directly into the alkyl aromatic oxidation zone, forming the desired $NO_2$ *in situ*, as reflected in claim 22:

> 22. In a process wherein alkyl substituted aromatic compounds are oxidized with nitrogen dioxide in the presence of an inert organic solvent to form the oxidation products thereof, the improvement which comprises generating said nitrogen dioxide in situ by charging nitric oxide and oxygen to the reaction zone.

The NO effluent gas may be recovered and, after mixing with oxygen, is recycled directly to the alkyl aromatic oxidation zone. According to the specification, "it is necessary that small increments of NO or $NO_2$ be continuously introduced into the closed system" to the extent any NO gas is lost in such a continuous recycling system.

---

1. Appearing in Serial No. 225,833, filed September 24, 1962 and entitled "Oxidation of Hydrocarbons."

The board agreed with the examiner's application of the Fetterly,[2] O'Neill[3] and Gilman[4] references to the claimed subject matter. After pointing out (1) the various reactions expressly employed by Fetterly and O'Neill to generate $NO_2$ both *in situ* and *ex situ* in their oxidation processes, as heretofore noted, and (2) the knowledge in the art that NO and oxygen react to produce $NO_2$,[5] the board considered it "clearly obvious to the chemist to employ * * * [the latter] reaction for the liberation of nitrogen dioxide *in situ*" during the oxidation of the alkyl aromatic compound.

We think the Patent Office has established a prima facie case of obviousness which appellants' arguments, unsupported by evidence in the record as they are,[6] are insufficient to rebut. It seems to us that the prior art of record, rather than leading away from the claimed subject matter as appellants contends, would suggest the process here claimed to one of ordinary skill. Certainly, no reference of record deprecates the use of NO and oxygen mixtures as a feedstock to form $NO_2$ under the reaction conditions present in the alkyl aromatic oxidation zone. Nor is there any evidence of record which would give those in the art cause to believe that, as appellants urge, the reaction between NO and oxygen would not take place at sufficient rate and in sufficient amount to form the requisite quantity of $NO_2$ needed to effect oxidation under the reaction conditions present in the alkyl aromatic oxidation zone. While we appreciate appellants' arguments, we are not convinced the subject matter as a whole is unobvious.

The decision is affirmed.

Affirmed.

2. U.S. Patent 2,839,575, issued June 17, 1958. Fetterly discloses a process for oxidizing alkyl-substituted aromatic compounds which employs as an oxidizing agent a mixture of molecular oxygen and at least one compound selected from $NO_2$, organic nitrates, or organic nitrites. The amount of $NO_2-$ releasing compounds present at any given time is less than 2% of the weight of the alkyl-substituted aromatic compound being oxidized. As one source of $NO_2$, Fetterly employs the "mixture of nitrogen oxides," presumably $NO_2$ and NO, "obtained from the oxidation of ammonia." Or he may form $NO_2$ *ex situ* or *in situ* by thermal degradation of nitric acid vapor, organic nitrates or organic nitrites.

3. British specification 823,437, published November 11, 1959. O'Neill discloses a process for oxidizing dialkyl benzenes to benzene dicarboxylic acids employing as an oxidizing agent $NO_2$ "alone or in combination with small amounts of other oxidising agents such as air or other forms of molecular oxygen or for example 'nitrous fumes', which is a mixture of nitric oxide and nitrogen dioxide." "Alternatively," O'Neill states, "a nitrogenous substance may be used which liberates nitrogen dioxide under the oxidation conditions." He also discloses:
    The off-gases from the reaction are found to be substantially nitric oxide alone and this can be oxidised with oxygen to regenerate the nitrogen dioxide, which can be re-used for further oxidation of organic compounds.

4. Gilman, Organic Chemistry, Vol. IV, pp. 1225–1229 (1953).
    The point for which the Gilman reference was cited is not in issue here. It *need not be further discussed.*

5. Earlier, the examiner too had noted that "it is well known that as soon as nitric oxide comes into contact with air, it forms brown fumes as a result of oxidation to nitrogen dioxide." See also Webster's Third New International Dictionary (1961) under "nitric oxide" and "nitrogen dioxide."

6. The board did not consider certain documents submitted to it after its decision. Nor do we here. In re Cofer, 354 F.2d 664, 53 CCPA 830 (1966).