59 CCPA

### Application of Peter PINTEN et al.

United States Court of Customs
and Patent Appeals.

June 1, 1972.

Burgess, Dinklage and Sprung, attys. of record, for appellants. James F. Woods, Michael G. Gilman, of counsel.

S. Wm. Cochran for the Commissioner of Patents. Fred E. McKelvey, of counsel.

Before RICH, ALMOND, BALDWIN, and LANE, Associate Judges, and MAL-ETZ, Judge, United States Customs Court, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 1–20 in appellants' application entitled "Phenolic Resin Foams."[1] No claims have been allowed.

The invention relates to phenolic resin foams and the method of preparing such foams using low-boiling blowing agents in the presence of surface-active materials (surfactants) and acid hardening agents. Appellants disclose that through the use of a surfactant mixture of ethoxylated castor oil and ethoxylated nonyl phenol, the volume of the individual foam cells can be controlled. As appellants explain in their brief:

\* \* \* if one admixes with \* \* \* ethoxylated castor oil, ethoxylated nonyl phenol, then one can, at will, vary the pore size and quality

1. Serial No. 510,088 filed November 26, 1965.

from the fine-pored product produced with only ethoxylated castor oil to a coarse-pored product which is produced when the surfactant package consists of 90 to 90% ethoxylated nonyl phenol and the remainder, ethoxylated castor oil.

Although the examiner and the board in considering the claims lumped all of them together, appellants and the solicitor have separated the twenty claims into three categories. In the first they place claims 1–4, 7–13, and 15, which are directed to the method of producing phenolic foams and the products produced by the process, wherein the surfactant used is either ethoxylated castor oil alone or a mixture of ethoxylated castor oil and ethoxylated nonyl phenol. Claim 1 is illustrative:

> 1. In the process for the production of foam plastic of an aqueous mass containing at least 70% by weight of phenol-aldehyde resin as solids by reaction of phenol-aldehyde resin, a liquid organic low-boiling blowing agent for producing the foam, a surface-active agent and an acid hardening agent, the improvement which comprises employing as surface-active agent, a member selected from the group consisting of castor oil rendered water-soluble by ethoxylation, and a mixture of castor oil rendered water-soluble by ethoxylation and an ethoxylated nonyl phenol.

In the second group of claims mentioned are claims 5, 6, and 14, which specifically limit the surfactant to the mixture. In the third group are claims 16–20, which are drawn to a method for controlling the pore size of the foam by using the disclosed surfactant mixture. Claim 16 is illustrative of these claims:

> 16. Method of controlling the volume of the individual pores of a foam plastic prepared from an aqueous mass containing at least 70% by weight of a phenol-aldehyde resin containing a liquid organic low-boiling blowing agent for producing the foam, a surface-active agent and an acid hardening agent which comprises utilizing 0.5 to about 5% referred to the phenol-aldehyde resin of a mixture of castor oil rendered water-soluble by ethoxylation and an ethoxylated nonyl phenol as surface-active agent, the volume of the individual pores being controlled by the percentage of ethoxylated phenol present in said mixture.

The references of record relied upon by the board are:

| | | |
|---|---|---|
| Mullen | 2,933,461 | April 19, 1960 |
| Hurwitz et al. (Hurwitz) | 3,003,977 | October 10, 1961 |

The examiner also relied upon Nelson,[2] two Sterling patents,[3] and Erickson.[4] The board found, however, that these "remaining references are, at the best, merely cumulative and need not be considered further."

Mullen discloses foamed phenolic resins prepared by admixing a phenol-aldehyde resin, a blowing agent, a catalyst, and a surfactant. The surfactants disclosed which are the closest to those used by appellants are the polyethylene oxide ether of ricinoleic acid (i. e., ethoxylated ricinoleic acid, the glycerides of ricinoleic acid being a major component of castor oil) and alkyl aryl polyethylene ether glycols (for example, ethoxylated octadecyl phenol).

Hurwitz discloses using emulsifiers (surfactants) to stabilize polyurethane foams. Among the emulsifiers mentioned are the ethylene oxide condensate of castor oil (i. e., ethoxylated castor oil) and nonylphenoxypolyethoxyethanols (i. e., ethoxylated nonyl phenol).

In affirming the rejection of all claims under 35 U.S.C. § 103 as unpat-

2. No. 2,446,429 issued August 3, 1948.

3. No. 2,608,536 and No. 2,629,698, issued August 26, 1952 and February 24, 1953, respectively.

4. No. 3,300,419 issued January 24, 1967 on an application filed July 15, 1963.

entable over Mullen in view of Hurwitz, the board stated:

> We have no doubt that the surface-active agents named in the Mullen patent are so closely related to the named surface-active agents of Hurwitz et al. that substitution of the latter for the former would be obvious within the meaning of 35 U.S.C. § 103. It is of no particular moment that the polyurethane foams of Hurwitz et al. are not the same as the phenolaldehyde foams of Mullen; the Mullen patent is the basic reference, and the Hurwitz et al. patent is cited merely to show the closely related surface-active agents here claimed. Indeed, in view of the fact that the claimed surface-active agents are not asserted to be novel *per se*, the citation of the Hurwitz et al. patent is hardly necessary, nothing more being involved than the obvious substitution of known closely related surface-active agents for the surface-active agents of Mullen.

Appellants requested reconsideration, asking in particular that the board give additional consideration to claims 16–20 which call for controlling the volume of the individual pores of the phenolic resin foam by use of the disclosed surfactant mixture. On reconsideration, the board refused to make any changes in its previous decision but stated in regard to claims 16–20 that:

> The use of a mixture of ethoxylated castor oil and ethoxylated nonyl phenol, as specified in claims 16 through 20, (also in claims 5, 6, and 14) can hardly be regarded as critical in view of the fact that the two materials may be admixed in any and all proportions. The argued "control" feature is of little significance because a foam prepared with a particular mixture of surface-active agents will necessarily have pores of a certain size. It is of no moment with respect to any one run or any one product that other runs using other proportions of surface-active agents will produce products having pores of a somewhat different size.

We will consider first the issue with respect to claims 1–4, 7–13, and 15, which read on the preparation of foams using an ethoxylated castor oil surfactant. We affirm the rejection of said claims as unpatentable under § 103 over Mullen in view of Hurwitz since we think it would have been obvious to one of ordinary skill in the art to use ethoxylated castor oil, which Hurwitz shows to be a known surfactant, in place of the related ethoxylated ricinoleic acid of Mullen. We have found nothing in appellants' arguments which persuades us of any error in the board's decision in that regard. In fact, at several points in the brief and at oral argument appellants came close to admitting that the use of the known surfactant of Hurwitz in the Mullen process would indeed have been obvious. In contrast, appellants seemingly emphasized the patentability of the surfactant mixture with which the pore size of the foams produced can be controlled by varying the relative proportions of the ethoxylated castor oil and the ethoxylated nonyl phenol in the mixture.

Claims 5 and 6 are directed to the method of preparing phenolic resin foams using such a surfactant mixture, and claim 14 to the product produced by that process. While none of the references of record disclose surfactant mixtures of ethoxylated castor oil and ethoxylated nonyl phenol, Hurwitz does disclose that both are known surfactants. Therefore, as a general proposition, we agree with the Patent Office that mixtures of the two surfactants would have been obvious to one of ordinary skill in the art. See In re Crockett, 279 F.2d 274, 47 CCPA 1018 (1960). Accordingly, it would seem to follow for the same reasons given in regard to the claims which read on the use of ethoxylated castor oil alone that it would have been obvious to use such a surfactant mixture in the Mullen process.

Claims 16–20 present an entirely different picture, however. Those claims are directed specifically to controlling the volume of the individual

foam cells by varying the proportions of the two surfactants of the mixture. As noted, there is no specific disclosure in the art of record setting forth the claimed surfactant mixture, and, more importantly, there is no suggestion whatsoever that the proportion of ingredients in the surfactant mixture can be used to control the pore size. While Erickson, upon which the solicitor relies,[5] states that the "wetting agent [surfactant] functions to assist the formation of uniform pores during foaming," the reference goes on to state that "The best combination of resin and wetting agent is easily established by a small number of trial batches under the expected operating conditions, once the resin to be used and the desired density has been finalized." As appellants point out, the teaching in Erickson only indicates that it would be obvious to try various amounts of surfactant in the admixture. It does not contain a teaching of any kind that varying the proportions of the components in a surfactant mixture will result in controlled variation of the pore sizes produced.

Claims 16–20 specify that varying the amount of ethoxylated nonyl phenol in the surfactant mixture determines the type of pores produced in the foam. It is only through hindsight that any suggestion of this claimed limitation can be reconstructed from the art of record. There simply is no teaching of this feature whatsoever. Accordingly, we reverse the board's decision in regard to claims 16–20.

The decision of the board is affirmed as to claims 1–15 and reversed as to claims 16–20.

Modified.

5. Although the board treated Erickson as merely cumulative, it is art of record which illustrates the same point the examiner felt Hurwitz illustrated, i. e., that surfactants to an extent have an effect on the cell size of the resultant foam. Therefore, we think it properly before us. The other references which the solicitor relies on in this regard (those attached as appendixes to the solicitor's brief) are not of record and are not the proper subject matter for judicial notice. Accordingly, we have not considered them in reaching our decision. In re Cofer, 354 F.2d 664, 53 CCPA 830 (1966).